# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-2013V
UNPUBLISHED

| | |
|---|---|
| TERESA L. RITTER,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: March 26, 2024<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Influenza ("Flu"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Brynna Gang*, Kraus Law Group, LLC, Chicago, IL, for Petitioner.

*Elizabeth Andary*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT**[1]

On December 29, 2020, Teresa Ritter filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 17, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Relevant Procedural History

More than a year after the claim's initiation, Respondent filed a status report stating that he was willing to engage in settlement discussions, but they did not succeed. Petitioner subsequently filed her motion for a ruling on the record and damages on August 30, 2021. Petitioner's Motion for Ruling on the Record and Memorandum in Support ("Mot."), ECF No. 48. Respondent opposed the motion on December 29, 2022, arguing that Petitioner had not established a Table claim because Petitioner did not establish onset within 48 hours of vaccination and had prior reports of left shoulder pain. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 50, at 10-13. Petitioner filed a reply on January 5, 2023. Petitioner's Reply in Support of Her Motion for Ruling on the Record and Damages Award ("Reply"), ECF No. 51. The matter is ripe for resolution.

## II.    Petitioner's Medical Records

Prior to the relevant vaccination, Petitioner's medical history is significant for chronic weakness and pain related to a car accident that occurred in the 1980's. Ex. 23 at 1; Ex. 9 at 7. Additionally, Petitioner attended routine chiropractic appointments. Approximately eighteen months prior to her vaccination, Petitioner began treating with Eric Nash, D.C., a chiropractic doctor. Ex. 19 at 89, 93. She attended treatment to address stiffness in her neck and shoulders, lower back pain, and stiffness in her thoracic lumbar region. *Id.* at 97. Beginning in June of 2017, Petitioner reported right shoulder pain. *Id.* at 19. Additionally, between October of 2017 and April, 2018, Petitioner treated for bilateral shoulder pain described as subluxations. *Id.* at 33, 59.

Petitioner received a flu vaccine in her left shoulder on October 17, 2018. Ex. 1. A little more than three weeks later, on November 9, 2018, Petitioner first reported left shoulder pain to D.C. Nash. Ex. 2 at 4.[3] Petitioner specifically stated that she had experienced left arm pain and mobility issues "since" a vaccination a few weeks prior. *Id.* She again reported left shoulder pain and difficulty lifting her arm on November 16, 2018. *Id.* at 6. An examination demonstrated reduced range of motion. *Id.*

On November 20, 2018, Petitioner reported "pain at the injection site" following her flu vaccination to Paladina Health, an on-site primary care provider. Ex. 3 at 44. She again reported pain on November 30, 2018, noting that it started "after flu shot." *Id.* at 42. Petitioner also saw D.C. Nash on November 30, who recommended physical therapy. Ex. 2 at 7.

---

[3] Petitioner saw D.C. Nash on October 26, 2018, nine days post-vaccination, but did not mention left arm or shoulder pain. Ex. 2 at 3.

On December 4, 2018, Petitioner made a statement regarding shoulder pain in connection with a workers' compensation claim. Ex. 12 at 3-4. She reported that she received a vaccination on October 17, 2018, and "was trying to figure out what [she] did to [her] arm" because she forgot about the vaccination. *Id.* Petitioner continued to report left shoulder pain, and received a prescription for lidocaine patches and a non-steroid anti-inflammatory. Ex. 3 at 38, 30-31.

Between January 17 and March 21, 2019, Petitioner attended fourteen physical therapy sessions. Ex. 5 at 2-64. Initially, she described her left shoulder pain as throbbing between 0-8 out of ten. *Id.* at 64. Petitioner also stated that her pain began after she received a flu vaccine. *Id.* At her discharge, she made progress but continued to report slight limitations with mobility and mild pain levels of zero-to-three out of ten. *Id.* at 6-7. She also reported that her shoulder was "at about 80%". *Id.*

Petitioner received an MRI on June 1, 2019, which revealed tendinosis, partial tear of supraspinatus and infraspinatus tendons, and mild buritis. Ex. 3 at 75-76. On June 18, 2019, Petitioner saw orthopedic surgeon, Christopher Kilian, M.D., for continued left shoulder pain "after administration of a flu vaccine at work on October 17, 201[8]". Ex. 7 at 6. She reported that her pain was 85% improved but felt that her progress had "plateaued." *Id.* Dr. Kilian assessed Petitioner with rotator cuff tendonitis with low grade partial tearing and mild bursitis. *Id.* at 10. A cortisone injection was administered, her medications were refilled, and a home exercise program was recommended. *Id.,* Ex. 8 at 11.

At a follow-up with D.C. Nash on June 21, 2019, Petitioner stated that she was "feeling overall better" after her cortisone shot. Ex. 2 at 27. Petitioner also returned to Dr. Kilian on September 16, 2019, when she reported significant improvements with her pain. Ex. 8 at 19-22. Dr. Killian provided a return to work note with no restrictions. *Id.* at 3.

Petitioner submitted an affidavit in support of her claim, signed on November 23, 2022. Ex. 23. She states that she was in a car accident in 1985 that resulted in lingering weakness in her right side that also caused left sided pain and weakness due to her need to compensate. *Id.* at 1-2. Additionally, she stated that her shoulder pain began "right after" her flu vaccine on October 17, 2018. *Id.* at 2. However, she did not seek care immediately because she assumed her pain was "muscle soreness that would go away." *Id.* at 3.

### III. Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. *See* § 11(c)(1)(A)(B)(D)(E).

aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that Would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

There is evidence in this case of prior, shoulder-related concerns. Respondent notes that Petitioner reported left shoulder pain eighteen months prior to her vaccination and received numerous adjustments to that shoulder between October 2017 and June of

5

2018. Opp. at 12 (citing Ex. 19 at 35-64). Petitioner maintains that these adjustments were bilateral and related to tension from longstanding right-sided pain stemming from a pervious car accident. Mot. at 10 (citing Ex. 23).

At the same time, Petitioner's records consistently attribute her shoulder pain to the flu vaccine she received in October 2018. *See, e.g.*, Ex. 2 at 4 (reporting she received a flu injection "a few weeks ago with persistent shoulder pain since" and difficulty raising her left arm); Ex. 3 at 44 (reporting on November 20, 2018 "pain at the injection site" following her flu vaccination); Ex. 5 at 64 (stating that her shoulder pain began after she received a flu vaccine). Further, Petitioner did not seek treatment for any prior issues in the six months before her relevant vaccination. Ex. 3 at 44. Thus, the evidence sufficiently preponderates in Petitioner's favor on this Table element to find it is satisfied.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported left shoulder pain on November 9, 2018. Ex. 2 at 4. Respondent argues that Petitioner's statements are vague and fail to identify a specific onset date for her shoulder symptoms. Opp. at 10-11. Even so, a finding of Table-consistent onset can be made based on such a record, even if a bit thin. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner consistently linked her shoulder pain to the October flu vaccine and sought care only twenty-three days after her vaccination. Additionally, there are no records suggesting an onset outside of 48-hours post-vaccination.

Respondent also argues that Petitioner had an intervening medical visit on October 26, 2018, but did not mention left shoulder pain at that time. Opp. at 11. Petitioner explained in her affidavit, however, that she assumed the pain was soreness that would dissipate with time. Ex. 23 at 3. It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, IO have already found her pre-existing issues were not associated with her post-vaccination symptoms, and there is nothing in the records to suggest that any such condition or abnormality exists otherwise.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 17, 2018, in the United States. Ex. 19 at 89; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner collected a civil award for her injury. Ex. 10; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the record, I find preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA, and that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master
